**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | | |
|---|---|---|---|
| Richard Robin, | ) | | |
| Plaintiff, | ) | | |
| | ) | Case. No. 15 C 11377 | |
| v. | ) | | |
| | ) | Judge Ronald A. Guzmán | |
| City of Zion, et al., | ) | | |
| Defendants. | ) | | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part [28]. Robin has 21 days from the date of entry of this order to file an amended complaint with respect to the claims the Court has dismissed, to the extent he is able to in compliance with his obligations under Federal Rule of Civil Procedure 11.

## STATEMENT

Richard Robin brings an eleven-count complaint alleging various constitutional and state law violations in what appears to be a long-running dispute with the City of Zion ("the City") as to its enforcement of its municipal code with respect to rental properties owned by Robin. After being cited for numerous violations and being assessed fines, Robin brought an administrative action in the Circuit Court of Lake County, which affirmed the order of the City's hearing officer. An appeal of that decision remains pending. Specific facts will be discussed as necessary in the text of the order. Defendants move to dismiss all of the claims.

### A.    Motion to Dismiss Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) asserts that a complaint fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion, the complaint must provide enough factual information to state a claim for relief that is plausible on its face and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the motion to dismiss stage under Rule 12(b)(6), all of the "factual allegations contained in the complaint" must be "accepted as true." *Bell Atl.*, 550 U.S. at 572. Furthermore, well-plead facts are viewed in the light most favorable to the plaintiff. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016). However, "legal conclusions and conclusory allegations merely reciting the elements of a claim are not entitled to this presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).

**B.     Analysis**

1.     <u>Count I</u>   (Equal Protection–vacant units citations)

The Court may take judicial notice of Robin's administrative complaint and the March 23, 2015 order of the Circuit Court of Lake County, Illinois.[1]  *Sherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013) (stating that a court may take judicial notice of court records); *Armstrong v. City of Chi.*, No. 12 C 3828, 2013 WL 251737, at *1 (N.D. Ill. Jan. 23, 2013) (noting that court can take judicial notice of the record from Circuit Court of Cook County and the Department of Administrative Hearings).

The City cited Robin for violations of its municipal code,  § 10-179, requiring that vacant buildings be registered with the City and that the owner provide a plan for its sale or rent as well as maintaining to code.  (Defs.' Mot. Dismiss, Ex. B, Dkt. # 28-2, *Robin v. City of Zion*, No. 14 MR 0854 (Lake Cnty. Cir. Ct., Mar. 23, 2015, at 2).)  Robin was later cited for violations of § 10-178, which requires a vacant building with broken windows or points of entry to be boarded within 24 hours of the event causing the damage or entry point.  (*Id.*)  At a hearing in April 2014, the City's hearing officer found five of Robin's units in violation of § 10-179, and two of the units in violation of both § 10-178 and § 10-179.  (*Id.*)  In the March 2015 suit filed in Lake County circuit court, Robin challenged the decision of the City's hearing officer imposing a fine of $250.00 per day for each of the seven units in violation.  (*Id.*)

Defendants contend that Count I of the complaint, a class of one equal protection claim, is barred by res judicata because, as noted by the Seventh Circuit, "Illinois (a) permits the joinder of § 1983 claims with administrative-review actions, and (b) applies the doctrine of merger and bar, [thus,] we have held that an administrative-review action forecloses any later § 1983 action in federal court arising out of the same transaction."  *Durgins v. City of E. St. Louis, Ill.*, 272 F.3d 841, 843 (7th Cir. 2001).  Illinois law provides that res judicata will bar federal claims where (1) there has been a state court final judgment on the merits; (2) the state court judgment involved the same parties or privies as the current action; and (3) the state court action "constitute[d] the same cause of action as the current claims." *Garcia v. Vill. of Mt. Prospect*, 360 F.3d 630, 635 (7th Cir. 2004).  Here, Defendants acknowledge that Robin's appeal of the state court judgment is still pending. Accordingly, because there has been no final judgment in state court, this basis for relief is denied.

Defendants also contend that Robin's equal protection claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), which "precludes a § 1983 plaintiff from bringing a claim that, if successful, 'would necessarily imply the invalidity of his conviction or sentence.'"  *Boothe v. Sherman*, No. 13 C 7228, 2016 WL 3125005, at *6 (N.D. Ill. June 3, 2016) (citation omitted).

---

[1]  Plaintiff appealed the March 23, 2015 order of the Circuit Court of Lake County to the Illinois Appellate Court, Second Judicial District, *Robin v. City of Zion*, No. 15-1122.  According to Defendants, the appeal remains pending.  (Defs.' Mot. Dismiss, Dkt. # 28, at 3 n.2.)

But Defendants cite to no case in which *Heck* has been applied to a municipal code violation in which a plaintiff is not incarcerated. Therefore, this ground for relief is denied.

2.    Count II   (Equal Protection–water meter ordinance citations)

With respect to Count II, Robin alleges that on July 29, 2015, Defendant Victor Ransom, a City Water Department Inspector, conducted inspections of the twenty units in the five buildings Robin owned, during which Ransom attempted to shut off water to Robin's occupied residential rental units. (Compl., Dkt. # 1, ¶ 47.) On August 5, 2015, as a result of the July 29, 2015 inspections by Ransom, Defendant Richard Ianson, Director of the City Building Department, issued citations to Robin for violations of the City's Municipal Code §§ 10-294.1, 10-296, 94-37, 94-42, 94-44, 94-82, and 94-352, because Robin allegedly disconnected and removed fifteen of the twenty meters servicing the twenty units in the five residential buildings he owned. (*Id.* ¶ 48.) On August 5, 2015, the City assessed a $5,000.00 fine for each of the twenty residential units in the five buildings owned by Robin, for a total fine assessment of $100,000.00. (*Id.* ¶ 49.) Section 94-352 of the City's municipal code provides in relevant part that "[a]ll premises or persons using water from the city water system must be equipped with a water meter provided by the city. Every dwelling unit shall have a separate water meter." (*Id.* ¶ 50.) Robin alleges that as a result of the citations, he had to pay for an additional 15 water meters in his buildings as well as per-unit, per-meter water service fees. (*Id.* ¶ 51.) According to Robin, several other property management companies in Zion have not been cited for similar water meter violations. (*Id.* ¶¶ 52-56.)

Defendants contend that Robin's claim is barred by res judicata and settlement of the claims. According to Defendants' motion to dismiss, it voluntarily dismissed the citations issued to Robin, and the City's hearing officer did not issue a formal written order because the City settled the water meter violations with Robin. This argument requires review of facts and documents outside and not central to the complaint; thus, it is not proper for consideration on a motion to dismiss.

In the alternative, the City contends that Robin fails to state a *Monell* claim against the City with respect to Counts I and II. According to the complaint, the equal protection violations were the result of the actions of Ianson and Robert Miller, the City's Lead Property Inspector. The City argues that neither Ianson nor Miler are final policymakers for the City because Ianson is "merely an agent who manages the building department" and Miller "does not even manage a City department." (Defs.' Mot. Dismiss, Dkt. # 28, at 6.) Again, however, this is an issue that requires reliance on facts outside of the complaint and is therefore denied.

3.    Count III   (First Amendment–retaliation based on gathering of information)

In this count, Robin alleges that on April 17, 2014, he attempted to gather evidence to support his defense of the citations issued on January 30, 2014 by driving throughout the City taking photos of government buildings and the homes of City employees that worked in the

building department. (Compl., Dkt. # 1, ¶ 31.) Robin's purported goal was to establish that the City's ordinances were not uniformly enforced, unfairly enforced against him and not enforced against City officials and employees. (*Id*.) At or about 4:30 p.m. on April 17, 2014, Robin arrived at the home of Defendant Robert Surano, the Lead Property Maintenance Inspector for the City, to take photos of his home. (*Id*. ¶ 32.) Surano had knowledge of the City's citations against Robin, having himself issued notices of violations to Robin. (*Id*.) Robin parked his vehicle on the opposite side of the street from Surano's home, exited his vehicle, and took a photograph of the front of Surano's home. (*Id*. ¶ 33.) After Robin took the photo, Surano came speeding up the street in a City truck, stopping in front of Robin's vehicle. (*Id*.) Robin walked across the street as Surano watched from the City vehicle, and took a photograph of the north side of Surano's home. (*Id*. ¶ 34.) As Robin was walking back to his vehicle, Surano drove the City vehicle to within a foot of Robin. (*Id*. ¶ 35.) After some discussion and further photos being taken, Robin felt threatened and called 911, and three City squad cars responded. (*Id*. ¶¶ 36-40.) The officers denied Robin's request to file a complaint against Surano for assaulting him with a City vehicle, and arrested Robin for disorderly conduct. (*Id*. ¶ 43.) Robin was booked, photographed and placed in a holding cell for two hours but then was released on his own recognizance. (*Id*. ¶ 45.)

Defendants assert that Robin's information gathering is not protected by the First Amendment because it involved a private dispute with the City. "[T]he First Amendment provides at least some degree of protection for gathering news and information, particularly news and information about the affairs of government." *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 597 (7th Cir. 2012). However, "[t]he First Amendment only protects speech that addresses matters of public concern." *Linkmeyer v. M.S.D. Lawrence Twp. Sch. Corp.*, No. 1:13-CV-1144-WTL-DML, 2013 WL 6804750, at *3 (S.D. Ind. Dec. 20, 2013). "Construed broadly, 'matters of public concern' include anything 'that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication.'" *Id*. (citation omitted). "[T]he Seventh Circuit has made clear that speech does not address a matter of public concern unless it demonstrates some intent to draw public attention to a public issue. *Id*. For example, "the First Amendment offers no protection to speech the sole purpose of which is to bolster the plaintiff's position in a private personnel dispute–even if the speech relates in some manner to a matter of general societal interest." *Id*.

Robin alleges that he was gathering "evidence to support his defense of the citations issued on January 30, 2014." (Compl., Dkt. # 1, ¶ 31.) Thus, Robin's actions in photographing Surano's house are not protected by the First Amendment. While he argues that the issue of whether the City treats its employees more favorably than private citizens is "not a concern limited to the interests of Mr. Robin alone," (Resp., Dkt. # 35, at 8), he fails to point to any allegations supporting such a statement. The motion to dismiss this claim is granted.

4.    <u>Count V</u>   (First Amendment–retaliation denying access to courts)

Robin alleges that the City police officers who responded to the 911 call he made in front

of Surano's home deprived him of his First Amendment right of access to the court system when they arrested him and rebuffed his requests to file a complaint against Surano. "Those seeking to vindicate their rights in court enjoy a constitutional right of access to the courts that prohibits state actors from impeding one's efforts to pursue legal claims." *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000). "To prove a violation of this right, a plaintiff must demonstrate that state action hindered his or her efforts to pursue a nonfrivolous legal claim and that consequently the plaintiff suffered some actual concrete injury." *Id*. While stating that the officers failed to file the complaint at the time of his arrest, Robin fails to allege that he attempted or was prevented from filing a complaint at some other time – even later that same day. *See Vasquez v. Hernandez*, 60 F.3d 325, 329 (7th Cir. 1995) (finding no denial of access to courts where police delayed the disclosure of key facts for six months and stating that "though the [plaintiffs] are correct in their assertion that the wrongfulness of an act is judged at the time it is done, the constitutionality of that act may indeed depend on other contextual factors including the passage of time. 'Not every act of deception in connection with a judicial proceeding gives rise [to a constitutional action].'") (citation omitted). Robin's allegations fail to state a plausible claim for a denial of access to the courts. Therefore, the motion to dismiss this claim is granted.

     5.   <u>Count VII</u>  (Fourth Amendment–false arrest)

Robin alleges that the three defendant police officers and Surano arrested him for disorderly conduct without probable cause. "Probable cause to make an arrest is present when 'the facts and circumstances within the officer's knowledge and of which the officer has reasonable trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense.'" *United States v. Cassiberry*, No. 2:15-CR-60, 2016 WL 3049569, at *5 (N.D. Ind. May 31, 2016). "Probable cause 'does not require evidence sufficient to support a conviction, nor evidence demonstrating that it is more likely than not that the suspect committed a crime.'" *Id*.

The City of Zion Municipal Code defines disorderly conduct as when a person "knowingly [d]oes any act in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." (Compl., Dkt. # 1, ¶ 61.) Defendants assert that the officers had probable cause to arrest Robin based on his own allegations, including that:

> 32. At or about 4:30 p.m. on April 17, 2014, Mr. Robin arrived at the home of Mr. Surano, the Lead Property Maintenance Inspector for the City, to take photos of his home. Mr. Surano had knowledge of the City's citations against Mr. Robin, having himself issued notices of violations to Mr. Robin.

> 33. Mr. Robin parked his vehicle on the opposite side of the street from Mr. Surano's home, exited his vehicle, and took a photograph of the front of Mr. Surano's home. After Mr. Robin took the photo, Mr. Surano came speeding in a southerly direction from the north end of the street in a City truck and stopped in the middle of the street, before Mr. Robin's vehicle.

34. Mr. Robin proceeded to walk across the street as Mr. Surano watched from the City vehicle, and took a photograph of the north side of Mr. Surano's home.

35. After taking the photograph, Mr. Robin proceeded to walk back across the street to his vehicle. At that moment, Mr. Surano proceeded to drive the City truck forward coming within a foot of Mr. Robin. Mr. Robin then exclaimed, "What the f---- are you doing, are you trying to kill me?" Mr. Surano, who had the vehicle windows down, responded by saying "What are you doing?"

36. Mr. Robin, fearful of being hit with the City vehicle, explained to Mr. Surano that he was taking photographs in order to build evidence for his upcoming hearing with the City and that "you probably know who I am," to which Mr. Surano responded, "I know who the f---- you are."

37. Mr. Robin then completed his walk towards his vehicle, and then returned to the other side of the street once more, to take a photo of the south side of Mr. Surano's home.

38. After taking the photograph of Mr. Surano's home, Mr. Robin proceeded to walk back across the street to his vehicle, when Mr. Surano again drove the City truck within a foot of Mr. Robin.

39. Mr. Robin was again fearful of being hit with the City vehicle and hurried to his vehicle where he proceeded to call 9-1-1.

40. Mr. Robin informed the 9-1-1 operator that Mr. Surano was trying to hit him with his vehicle, to which the operator responded that a call regarding the incident had already been made and police officers had been dispatched to the scene. Shortly thereafter, three City squad cars arrived on scene.

41. Three officers arrived on scene: Mr. Ray Jr., Officer John Doe, and Officer Jack Doe. Officer Ray Jr. spoke to Mr. Robin and Mr. Robin explained that he was gathering evidence regarding the conduct of the City, specifically for his municipal code violation hearing on April 24, 2014. Mr. Robin further explained that Mr. Surano had assaulted him with the City vehicle.

42. Mr. Robin informed Officer Ray Jr. that he wanted to file a complaint against Mr. Surano for his assault with the City vehicle. Thereafter, Officer Ray Jr. went to speak with Mr. Surano with whom the other Police Officers were already speaking.

43. After the Police Officers spoke with Mr. Surano, and knowing that Mr. Robin was gathering evidence for the April 24th, 2014, hearing, they returned to

Mr. Robin's vehicle, denied his request to file a complaint against Mr. Surano, placed him under arrest for disorderly conduct and took him into custody.

. . .

62. The Police Officer[]s arrested Mr. Robin for a verbal exchange between him and Mr. Surano. However, the Police Officers[] were informed by Mr. Robin that the exchange occurred in response to Mr. Surano assaulting Mr. Robin with his vehicle, and that Mr. Surano assaulted Mr. Robin again after the verbal exchange occurred . . . .

(*Id*. ¶¶ 32-43, 62 (Count VII).)

Here, Robin admits that he was taking photographs of a city employee's home when the employee, Surano, drove up in his car, the two men had a tense verbal exchange in which Robin acknowledged that Surano, as the Lead Property Maintenance Inspector for the City, probably knew who Robin was, Robin took another photograph of Surano's house, Robin called 911, and after speaking with Surano, the responding officers arrested Robin for disorderly conduct. Despite Robin allegedly telling the officers that the verbal exchange occurred "in response to" Surano assaulting him with his car, "[l]ike a grand jury, . . . police may act on the basis of inculpatory evidence without trying to tote up and weigh all exculpatory evidence." *Hernandez v. Sheahan*, 455 F.3d 772, 775 (7th Cir. 2006).

Because the totality of circumstances as alleged by Robin establish that the officers had probable cause to arrest Robin for disorderly conduct, the motion to dismiss this claim is granted.[2]

     6.   <u>Counts IV, VI, VIII</u>  (§ 1985 conspiracy claims)

Defendants also seek to dismiss Counts IV (conspiracy to prevent Robin from gathering evidence in advance of a hearing against Surano and the officers), VI (conspiracy to deny Robin access to the courts against Surano and the officers), and VIII (conspiracy to commit unlawful arrest against Surano and the officers). Each of the conspiracy counts is alleged to be pursuant to 42 U.S.C. § 1985(3). However, "[t]o the extent that [Robin] is alleging a conspiracy under § 1985, those claims will be dismissed because [he] has not alleged the Defendants were motivated by race or other class-based animus, which is a prerequisite under § 1985(3)." *Southerland v. Bedwell*, No. 15-3117, 2016 WL 3004618, at *9 (C.D. Ill. May 24, 2016).

---

[2] In his response to the motion to dismiss, Robin contends that Surano was acting in his capacity as a private citizen, not in his capacity as a city employee, when he engaged in the confrontation with Robin and spoke with the police officers. Thus, any assertion that Surano is liable for false arrest also fails due to Robin's concession that Surano was not acting under color of law.

7.     Count IX   (State Law Assault claim)

According to Robin, Surano assaulted him when he "accelerated his vehicle to within an arm's reach" of Robin.  (Compl., Dkt. # 1, ¶ 58 (Count IX).)  Defendants contend that this claim is time-barred under the one-year statute of limitations provided for in the Illinois Tort Immunity Act, 745 Ill. Comp. Stat. 10/8-101, which applies to "'public employee[s] acting within the scope of their employment.'"  *Snyder v. Vill. of Midlothian*, 302 F.R.D. 231, 234 (N.D. Ill. 2014) (citation omitted).  Robin, however, alleges that Surano was acting as a private citizen, not within the scope of his employment.  Thus, resolution of this issue is improper on a motion to dismiss.

8.     Count X   (State Law False arrest claim against officers and Surano)

Defendants also contend that this claim is time-barred.  Robin does not respond to this argument with respect to the officers; accordingly, that portion of the claim is dismissed.  *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ( "Failure to respond to an argument—as the [plaintiff] ha[s] done here—results in waiver.").  As to Surano, under Illinois law, "[a]n unlawful arrest by an officer caused or procured by a private person is the same as an arrest by the private person."  *Mayorov v. United States*, 84 F. Supp. 3d 678, 701 (N.D. Ill. 2015).  The Court, however, has already concluded that Robin's arrest was not unlawful based on the allegations in the complaint.  Therefore, this claim is also dismissed as to Surano.

9.     Count XI (State Law Malicious Prosecution claim)

Because the Court finds that Robin's allegations establish that probable cause existed to arrest him, Robin's claim for malicious prosecution also fails.  *Jackson v. City of Peoria, Ill.*, No. 14-3701, 2016 WL 3125228, at *1 (7th Cir. June 3, 2016) ("The existence of probable cause also knocks out [plaintiff's] state-law theory that he is a victim of malicious prosecution.")

At the end of their motion, Defendants make the general assertion that any claims based on City conduct prior to 2013 are time-barred.  The Court, however, declines to make a generalized ruling about statute of limitations issues that are not fully addressed by the parties.

**C.     Conclusion**

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part.  Robin has 21 days from the date of entry of this order to file an amended complaint with respect to the claims the Court has dismissed, to the extent he is able to do so in compliance with his obligations under Federal Rule of Civil Procedure 11.

**Date**: June 29, 2016

_____
**Ronald A. Guzmán**
**United States District Judge**

8